UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AL-QERSHI WALLA,<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF THE CALIFORNIA CITY DETENTION CENTER, ET AL.,<br><br>Respondents. | Case No. 1:26-CV-02462-JLT-FJS<br><br>(A-Number: 077-417-545)<br><br>FINDINGS AND RECOMMENDATION THAT THE PETITION FOR WRIT OF HABEAS CORPUS BE GRANTED IN PART<br><br>(ECF No. 1) |

Petitioner Al-Qershi Walla ("Petitioner") is an immigration detainee proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1)

I. <u>BACKGROUND</u>

Petitioner is a native and citizen of Yemen. (ECF Nos. 1, 8 at 1.) Petitioner acquired lawful permanent residency status on October 8, 2014. (ECF No. 8-2 at 2.)

On July 10, 2025, immigration officials took Petitioner into custody and charged her with removability under 8 U.S.C. § 1227(a)(2)(b)(i). (ECF Nos. 8-1, 8-2.) On July 11, 2025, Petitioner was issued a notice to appear by the Department of Homeland Security. (ECF No. 8-2.)

On March 31, 2026, Petitioner petitioned for a writ of habeas corpus requesting that this court (1) order Petitioner's immediate release; (2) permanently enjoin and restrain Respondents from removing Petitioner to a third country absent compliance with administrative procedures

and (3) order all relief that the court deems just and proper. (ECF No. 1 at 22-23.)

On June 11, 2026, Respondents filed their motion to dismiss the petition (ECF No. 8) arguing that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c) due to her previous conviction for possession of a controlled substance (fentanyl) in violation of California Health & Safety Code § 11350. (ECF No. 8 at 1.) Based on this conviction Respondents contend that Petitioner is deportable under 8 U.S.C § 1227(a)(2)(b). (*Id.*) Respondents further argue that Petitioner should be required to challenge her mandatory detention under *Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999), because the district courts are not the correct forum to challenge mandatory detention under 8 U.S.C. § 1226(c). (*Id.* at ECF No. 3.)

On August 14, 2026, Petitioner filed her traverse. (ECF No. 11.) Petitioner does not appear to challenge the statutory authority for her detention. (*See id.*)

## II. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); 8 U.S.C. § 2241(c)(3). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The petitioner bears the initial burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

## III. DISCUSSION

The petition raises three claims for relief: (1) that petitioner's prolonged detention without a bond hearing violates the Due Process Clause of the Fifth Amendment; (2) that petitioner's removal to a third country would violate 8 U.S.C § 1231, the Convention Against Torture, and the Administrative Procedure Act; and (3) that Petitioner's removal to a third country would be punitive and in violation of the Fifth and Eighth Amendments to the United States Constitution. (ECF No. 1 at 16-19.)

A. <u>BASIS FOR DETENTION</u>

In analyzing Petitioner's challenge to his detention, the court "must first identify the statutory provision that purports to confer" authority for her detention. *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008). 8 U.S.C § 1226 (c)(1)(B) allows the Attorney General to take into custody any alien who is deportable by reason of having committed any offense covered in section 1227(A)(2)(B). *See* 8 U.S.C § 1226 (c)(1)(B). Under 8 U.S.C. § 1227(A)(2)(B):

> Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.

8 U.S.C. § 1227(A)(2)(B).

Here, Petitioner was convicted of offenses on several occasions. Respondent contends that Petitioner was taken into custody and charged with removability based on her April 3, 2025, conviction for possession of fentanyl. (*See* ECF Nos. 8-3 at 6-9, 8-4.) The court proceeds on that basis.

Because possession of fentanyl is a violation of California Health and Safety Code section 11350(a), Petitioner's conviction is necessarily an offense within the scope of 8 U.S.C § 1227(A)(2)(B). *See* Cal. Health & Safety Code § 11350; *see also* 1227(A)(2)(B). Accordingly, the undersigned finds that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c).[1] *See, e.g., Bucio Rosales v. Warden of the Golden State Annex Det. Facility*, No. 1:26-CV-02472

---

[1] Petitioner alleges she is subject to the detention provisions of 8 U.S.C. § 1231. (*See generally* ECF No. 1 at 16.) The court disagrees. Section 1231 applies to those aliens who have been ordered removed. 8 U.S.C. § 1231(a)(2), *cited and discussed in Zadvydas v. Davis*, 533 U.S. 678, 683 (2001). Currently, there is no information available to the court to suggest that Petitioner is subject to an order of removal. *See* https://acis.eoir.justice.gov/en/caseInformation (last visited October 6, 2026, using Petitioner's A-Number and nationality). The court will, therefore, take judicial notice that Petitioner is currently *not* subject to an order of removal, much less a "final" order of removal. *Daniels-Hall v. National Edu. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) (holding information may be judicially noticed where "it was made publicly available by government entities ... and neither party disputes the authenticity of the web sites or the accuracy of the information displayed [] therein.").

JLT HBK, 2026 WL 1030955 at *4 (E.D. Cal. Apr. 16, 2026) (holding that petitioner was subject to mandatory detention under 8 U.S.C. § 1226(c) given his two convictions of possession of a controlled substance under California statutes).

B. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Respondents argue that "Petitioner has not exhausted [her] administrative remedy to contest [her] mandatory detention under the procedures available in immigration court." (ECF No. 8 at 3 (citing *Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999)). As Respondents note, a *Joseph* hearing allows a detainee to avoid mandatory detention by demonstrating that there is no qualifying conviction to trigger section 1226(c). (ECF No. 8 at 3 (citing 8 C.F.R. § 1003.19(h)(2)(ii) (2002)). Petitioner, however, does not contest whether she was convicted. Invoking 8 U.S.C. § 1231, she instead argues that her detention has become prolonged without a significant likelihood of removal in the reasonably foreseeable future. (ECF No. 1 at 16.) While the court disagrees with the applicability of section 1231 to Petitioner, *supra* note 1, the court construes Petitioner's request as seeking relief under the Due Process Clause. And given that the immigration courts have not evinced a willingness to evaluate as applied due process violations in other mandatory detention settings, *see, e.g., Matter of Yajure Hurtado,* 29 I. & N. Dec. 216 (BIA 2025), and given that district courts have waived exhaustion based on that unwillingness, *see, e.g., J.S.M.R. v. Warden of Golden State Annex Detention Facility,* No. 1:26-CV-01474-KES-SAB (HC), 2026 WL 948525, at *1 (E.D. Cal. Apr. 8, 2026), this court does not recommend dismissing the Petition on failure to exhaust grounds.

C. DUE PROCESS

The court now turns to a discussion of Petitioner's as-applied due process claim. The Fifth Amendment's Due Process Clause provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). The Supreme Court nevertheless has recognized that "[d]etention during deportation proceedings is a constitutionally permissible part of [the deportation] process." *Demore v. Kim*, 538 U.S. 510, 531 (2003); *see also Carlson v. Landon*, 342 U.S. 524, 538 (1952) ("[d]etention is

necessarily a part of this deportation procedure”). Moreover, “Congress may make rules as to aliens that would be unacceptable if applied to citizens.” *Demore*, 538 U.S. at 522, *quoted in Rodriguez Diaz*, 53 F.4th at 1206.

There is a split among the circuits that have addressed whether the Due Process Clause affords section 1226(c) detainees a right to a bond hearing. *Compare Black v. Decker*, 103 F.4th 133, 148-50, 155 (2d Cir. 2024), *with Banyee v. Garland*, 115 F.4th 928, 933-34 (8th Cir. 2024). The Ninth Circuit has not taken a side in this circuit split. Although the Ninth Circuit has clarified that there is no statutory right to a detention hearing under section 1226(c), whether the Due Process Clause imposes a right to a detention hearing is an open question in this Circuit. *Avilez v. Garland*, 69 F.4th 525, 538 (9th Cir. 2023). *See also Rodriguiez Diaz v Garland*, 53 F.4th 1189, 1201 (9th Cir. 2022) (“[I]t remains undetermined whether the Due Process Clause requires additional bond procedures under *any* immigration detention statute”) (emphasis in original). Nevertheless, “essentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process.” *Lopez v. Garland*, 631 F. Supp. 3d 870, 877 (E.D. Cal. 2022) (quotation omitted). *But see Keo v. Warden of the Mesa Verde ICE Processing Ctr.*, No. 24-cv-919-HBK, 2025 WL 1029392, at *8 (E.D. Cal. April 7, 2025) (holding that there was no due process violation in continued detention under section 1226(c) without a bond hearing because the ongoing removal proceedings serve their intended purposes and are not intended to incarcerate for other reasons) (citations and quotations omitted). In other words, the Supreme Court's “conclusion [in *Demore*] that § 1226(c) is constitutional in some of its applications does not mean that the Court ‘does not have the power to grant petitions for habeas corpus raising *as-applied* constitutional challenges to [ ] detention without a bond hearing.’” *Carballo v. Andrews*, No. 1:25-cv-0978 KES EPG (HC), 2025 WL 2381464, at *4 (E.D. Cal. Aug. 15, 2025) (quoting *Perera v. Jennings*, 598 F. Supp. 3d 736, 744 (N.D. Cal. 2022)) (emphasis in original).

There is an open question on the appropriate test to use when evaluating a due process claim in immigration detentions like Petitioner’s. The Ninth Circuit has noted that many courts

have applied the *Mathews*[2] test in considering due process challenges in the immigration context. *See Rodriguez Diaz*, 53 F.4th at 1206 (noting that the government sought to use a substitute for the *Mathews* test that was "not specific" but "focuses more exclusively on the government's asserted interests in detaining aliens who are subject to removal"). Yet the Supreme Court has resolved some constitutional challenges to immigration detention without invoking *Mathews*. *See, e.g., Demore*, 538 U.S. at 523, 526–29; *Dusenbery v. United States*, 534 U.S. 161, 168 (2002) ("[W]e have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims"). *But see Rodriguez Diaz*, 53 F.4th at 1206 (noting that the Supreme Court applied *Mathews* in considering a due process challenge to an immigration exclusion hearing). And in *Rodriguez Diaz* the Ninth Circuit used the *Mathews* test and assumed (without deciding) that it applied to a due process claim for a second bond hearing in a section 1226(a) detention. 53 F.4th at 1206-07. Thus, the Court finds application of the *Mathews* test in this case appropriate where Petitioner seeks a bond hearing in a section 1226(c) detention.[3]

Under the *Mathews* test, the "identification of the specific dictates of due process generally requires consideration of three distinct factors." *Mathews*, 424 U.S. at 334–35. "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id*. at 335.

In the first *Mathews* factor, the Court evaluates Petitioner's private interest in being free

---

[2] *Mathews v. Eldridge*, 424 U.S. 319 (1976).

[3] To be sure, there are alternative tests formulated to evaluate the due process issues of prolonged detention. *See, e.g., Lopez v. Garland*, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022) (resolving a prolonged detention claim by evaluating "the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government"). These factors are largely incorporated in the *Mathews* test and, in the context of a *Mathews* analysis, the Ninth Circuit elaborated on the factors' relative strengths and weaknesses in *Rodriguez Diaz*.

from detention against the government's stated interests in protecting the public from a risk of danger and any risk of flight to avoid removal. Here, Petitioner has been detained almost fifteen months and does not appear to have been provided a bond hearing during this time. (ECF No. 8 at 3.) When analyzing a detention under section 1226(a) of a similar duration, the Ninth Circuit "assume[d] that [petitioner's] detention qualifies as 'prolonged' in a general sense." *Rodriguez Diaz*, 53 F.4th at 1207 (citing, *inter alia*, *Diouf II*, 634 F.3d at 1091). A noncitizen's private interest in "freedom from prolonged detention" is "unquestionably substantial." *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011). This duration tips in Petitioner's favor. Nonetheless, *Rodriguez Diaz* held that "in evaluating the first prong of the *Mathews* analysis, it is not sufficient to simply count the months of detention and leave it at that." 53 F.4th at 1208. Instead, the analysis should consider "[t]he process received during this time, the further process that was available to [the alien], and the fact that his detention was prolonged due to his decision to challenge his removal order must also be considered." *Id*. The Ninth Circuit further held that it was "important not to overstate the strength of Petitioner's showing under the first *Mathews* factor." 53 F.4th at 1213. In this case, there is no indication that Petitioner has been provided with any form of administrative hearing since her detention on July 10, 2025. (ECF No. 8 at 3.) In fact, Petitioner's master hearing will not be held until October 14, 2026. *See* https://acis.eoir.justice.gov/en/caseInformation (last visited October 6, 2026, using Petitioner's A-Number and nationality). And the other facts in *Rodriguez Diaz* that apparently counterbalanced the prolonged detention presented there (e.g., an order of removal, a prior bond hearing, the availability of an administrative appeal of that prior bond denial, and a lengthened removal process attributable to the petitioner's own actions), 53 F4th at 1208, are not present here. This first *Mathews* factor tips in Petitioner's favor.

In the second *Mathews* factor, the court considers "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," *Mathews*, 424 U.S. at 335. The court recognizes that Petitioner's triggering event for detention under section 1226(c) is a conviction. A collateral conviction of an enumerated crime reduces the risk of an erroneous deprivation of liberty

according to the terms of section 1226(c). But if the inquiry is broadened to a forwarding-looking assessment of risk of danger or flight once the duration of a section 1226(c) detention becomes prolonged, the "risk of an erroneous deprivation of [petitioners'] interest is high" where "[they have] not received any bond or custody redetermination hearing[.]" *Jimenez v. Wolf*, No. 19-CV-07996-NC, 2020 WL 510347, at *3 (N.D. Cal Jan. 30, 2020) (discussing 8 U.S.C. § 1226(c)). *Accord Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018) ("We have grave doubts that any statute that slows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so."). As stated above, there is no indication that Petitioner received a bond hearing since being taken into immigration custody roughly fifteen months ago. Because Petitioner's removal case is only just beginning and considering Respondents' position that Petitioner is subject to mandatory detention, it appears to the court that almost any additional procedural safeguard at this point in Petitioner's detention would add value. *Black v. Decker*, 103 F.4th 133, 153 (2d Cir. 2024) (so holding and reasoning that the most obvious additional safeguard "would be an individualized bond hearing at which an IJ can consider the noncitizen's dangerousness and risk of flight."). In absence of means for Petitioner to test the propriety of detention should circumstances change, the court finds that there is an increased risk of erroneous deprivation of Petitioner's liberty interest. *Cf. Rodriguez Diaz*, 53 F.4th at 1209 (holding that petitioner could not satisfy the second *Mathews* factor because section 1226(a) allowed subsequent bond hearings on materially changed circumstances and a previous bond hearing could be administratively appealed). The second *Mathews* factor thus weighs in favor of Petitioner.

In the third *Mathews* factor, the court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." *Mathews*, 424 U.S. at 335. The government's aim of "protecting the public from dangerous criminal aliens" and "increas[ing] the chance that, if ordered removed, the aliens will be successfully removed" are "interests of the highest order that only increase with the passage of time." *Rodriguez Diaz*, 53 F.4th at 1208 (quotations omitted). As other courts have

recognized, however, the key government interest at stake here "is not the continued detention of Petitioner, but the government's ability to detain him without a bond hearing." *Zagal-Alcaraz v. ICE Field Office Director*, No 19-cv-01358-SB, 2020 WL 1862254, at *7 (D. Or. March 25, 2020) (collecting cases). Here, the government's interest is tied to Petitioner's prior criminal history. (*See* ECF No. 8-2). The argument has merit, but that argument can be advanced at a bond hearing. Providing a bond hearing would not undercut the government's asserted interest in protecting the public or accomplishing removal; it provides a forum to substantiate those interests. Given "the minimal cost of conducting a bond hearing, and the ability of the [immigration judge] to adjudicate the ultimate legal issue as to whether Petitioner's continued detention is justified," courts have concluded that "the government's interest is not as weighty as [p]etitioner's." *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 777 (N.D. Cal. 2019), *quoted in Zagal-Alcaraz*, 2020 WL 1862254, at *7. The imposition of a bond hearing after roughly fifteen months of continued detention in the face of a regulatory framework that does not allow Petitioner to seek a bond hearing does not undermine the weighty and substantial interests the government pursues here.

On balance, the *Mathews* factors weigh in Petitioner's favor and outweigh the government's interest in further detention without an inquiry into whether circumstances have changed or whether Petitioner poses a flight risk or danger to the community. The court thus recommends that a bond hearing should be provided.

D. <u>BURDEN OF PROOF AT BOND HEARING</u>

The question is now who should bear the burden of proof at the bond hearing. As other courts have also concluded, the undersigned finds that "the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond" and that the bond hearing must comport with the other requirements of *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011). *See Loba L.M. v. Andrews*, No. 1:25-CV-00611-JLT-SAB (HC), 2025 WL 3187577, at *2 (E.D. Cal. Nov. 14, 2025) (citing *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011)); *see also Martinez v. Clark*, 124 F.4th 775, 785 (9th Cir. 2024) (stating that "the BIA properly noted that the government bore the burden to establish by clear and convincing

evidence that Martinez is a danger to the community" with respect to a bond hearing for a noncitizen detained under section 1226(c)). In the event Petitioner is "determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond," the immigration judge should consider Petitioner's financial circumstances and alternative conditions of release. *Hernandez v. Sessions*, 872 F.3d 976, 1000 (9th Cir. 2017).

E. THIRD COUNTRY REMOVAL

Petitioner also raises claims concerning third country removal. Specifically, Petitioner claims that her removal to a third country would violate her constitutional rights, the Administrative Procedure Act, the Convention Against Torture, and 8 U.S.C. §1231. (ECF No. 1 at 17-18.) She also claims her removal to a third country constitutes unconstitutional punishment. (ECF No. 1 at 18.) These claims are not ripe. Petitioner is a permanent resident who is currently not subject to an order of removal. The court will not preemptively restrain Respondents from *how* to effectuate removal when it is unclear *whether* the government may remove Petitioner.

The court acknowledges the safety concerns Petitioner presents should she be removed to her home country of Yemen. (*E.g.,* ECF No. 1 at 2-5.) Yet the usual removal process involves an evidentiary hearing before an immigration judge and at that hearing an alien may attempt to show that he or she should not be removed. Among other things, an alien may apply for asylum on the ground that he or she would be persecuted if returned to his or her home country. 8 U.S.C. § 1229a(b)(4); 8 C.F.R. § 1240.11(c) (2020). If that claim is rejected and the alien is ordered removed, the alien can appeal the removal order to the Board and, if that appeal is unsuccessful, the alien is generally entitled to review in a federal court of appeals. 8 U.S.C. §§ 1229a(c)(5), 1252(a). *Dep't of Homeland Sec. v. Thuraissigiam,* 591 U.S. 103, 108 (2020). And should a final removal order materialize, the immigration court will afford Petitioner an opportunity to designate a country of removal. 8 C.F.R. § 1240.10(f). This court need not recommend a restraint on third-country removal at this time.

IV. FINDINGS AND RECOMMENDATIONS

For the foregoing reasons, the court hereby RECOMMENDS that the petition for writ of habeas corpus be GRANTED in part (ECF No. 1) and Respondents be DIRECTED to provide

Petitioner with a bond hearing within fourteen (14) days before an immigration judge wherein the government must demonstrate by clear and convincing evidence, in accordance with the requirements of *Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011), that Petitioner is not a flight risk or a danger to the community, or in the alternative, release Petitioner on appropriate conditions of supervision. This court further recommends that Petitioner's claim for a restraint on third-country removal be DENIED without prejudice.

These findings and recommendation are submitted to the United States district court judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen (14) days after being served with a copy of these findings and recommendation, a party may file written objections with the court and serve a copy on all parties. *Id*. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendation" and shall not exceed fifteen (15) pages, except by leave of court with good cause shown. The court will not consider exhibits attached to the objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. The district judge may disregard any pages filed in excess of the fifteen (15) page limitation. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014). This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment.

IT IS SO ORDERED.

Dated: **October 7, 2026**

UNITED STATES MAGISTRATE JUDGE